UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | Case No. 23-cr-00243 (RDM) |
| v. : | |
| : | |
| JAMES WYMAN, : | |
| : | |
| Defendant : | |

## GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this sentencing memorandum in connection with the above-captioned matter. For the reasons set forth herein, the government requests that this Court sentence Defendant James Wyman to 30 days of incarceration, followed by one year of supervised release. The government also requests that this Court impose 60 hours of community service, and, consistent with the plea agreement in this case, $500 in restitution.

I.   Introduction

Defendant James Wyman, a retired consultant and construction manager, and graduate of the U.S. Military Academy at West Point (discharged in 1983 after serving six years in the U.S. Army), participated in the January 6, 2021 attack on the United States Capitol—a violent attack that forced an interruption of Congress's certification of the 2020 Electoral College vote count, threatened the peaceful transfer of power after the 2020 Presidential election, injured more than one hundred police officers, and resulted in more than 2.9 million dollars in losses.[1]

---

[1] As of July 7, 2023, the approximate losses suffered as a result of the siege at the United States Capitol was $2,923,080.05. That amount reflects, among other things, damage to the United States Capitol building and grounds and certain costs borne by the United States Capitol Police. The Metropolitan Police Department ("MPD") also suffered losses as a result of January 6, 2021, and is also a victim. MPD recently submitted a total of approximately $629,056 in restitution amounts,

1

On August 4, 2023, Wyman pleaded guilty to violating 18 U.S.C. §§ 1752(a)(1) and (b)(2). The government's recommendation for 30 days of incarceration followed by one year of supervised release is supported by Wyman's: (1) considerable period of time spent inside the Capitol Building (over an hour); (2) involvement in pushing open the Rotunda Door at 2:38 p.m., which allowed scores of other rioters to enter the Capitol; (3) physical and verbal confrontations with a police officer who was trying to clear the Rotunda of rioters; and (4) lack of remorse for his conduct on January 6.

The Court must also consider that Wyman's conduct on January 6, like the conduct of scores of other defendants, took place in the context of a large and violent riot that relied on numbers to overwhelm police, breach the Capitol, and disrupt the proceedings. But for his actions alongside so many others, the riot likely would have failed. Here, the facts and circumstances of Wyman's crime support a sentence of 30 days' incarceration followed by one year of supervised release in this case.

**II.     Factual and Procedural Background**

*The January 6, 2021 Attack on the Capitol*

To avoid unnecessary exposition, the government refers to the general summary of the attack on the U.S. Capitol set out in the plea agreement. *See* ECF 10 at 1-3.

*Defendant Wyman's Role in the January 6, 2021 Attack on the Capitol*

As detailed below, during the investigation into the events of January 6, 2021, law enforcement learned that Wyman traveled to Washington, D.C. and attended the "Stop the Steal"

---

but the government has not yet included this number in our overall restitution summary ($2.9 million) as reflected in this memorandum. However, in consultation with individual MPD victim officers, the government has sought restitution based on a case-by-case evaluation.

rally at the Ellipse on January 6, 2021. He then walked toward the U.S. Capitol. As Wyman marched with other rioters to the U.S. Capitol, he passed the fencing and barricades that showed that the Capitol grounds were restricted. He then ascended the steps and entered the U.S. Capitol building through the Senate Wing Door at 2:22 pm, as depicted in Image 1 below:



*(Image 1 – Wyman entering the U.S. Capitol Building)*

After he entered the U.S. Capitol, Wyman walked towards the Crypt, and then to the Memorial Door. Once at the Memorial Door, he shoved his way through the crowd, towards the hallway on the other side:[2]

---

[2] All images are from U.S. Capitol Police CCTV.



*(Image 2 – Wyman shoving through the crowd)*

He walked through the hallway:



*(Image 3 – Wyman walking down the hallway with other rioters)*

At 2:28 p.m., he turned around, walked back through the same hallway to the Memorial Door, and up the stairs to the Rotunda:



*(Image 4 – Wyman arrives at the Rotunda)*

After a few minutes walking around the Rotunda, Wyman headed to the Rotunda Door, which at that time was closed. At about 2:38 p.m., Wyman joined the crowd pushing to open the Rotunda Door from the back of the assembled protesters.



*(Image 5 – Wyman watching others at the Rotunda Door)*

5



*(Image 6 – Wyman joining other rioters)*



*(Image 7 – Wyman shoving into officers to get the Rotunda Door open)*

Less than 10 seconds after Wyman engaged with the group, the officers at the Rotunda Door became overwhelmed by the rioters and moved out of the way; the rioters forced the Rotunda Door open; and more rioters streamed into the Capitol building:



*(Image 8 – Wyman followed by a stream of rioters entering through the Memorial Door)*

For the next 35 minutes, Wyman walked back and forth between the Rotunda Door and the Rotunda. During this time, officers were ordering the rioters to leave the Rotunda, and ultimately physically pushing the rioters towards the Rotunda Door to get them out of the building. Instead of heeding their orders, Wyman stayed. As Officers tried to move the rioters out of the Rotunda, Wyman can be seen on video pushing an officer's baton away and can be heard telling the officer not to hit a protester.



*(Image 9 – Wyman interacting with police officer; his hand on the officer's baton)*

Here is a close-up of the interaction between Wyman and the police officer:



*(Image 10)*

Finally, at around 3:15 pm, Wyman was among the group of protesters that law enforcement officers pushed out of the Rotunda and towards the Rotunda Door:



*(Image 11 – Wyman moving towards the Rotunda Door)*

At 3:25 pm, over an hour after Wyman entered the Capitol building, he finally left through the Rotunda Door.

*The Charges and Plea Agreement*

On July 24, 2023, the United States charged Wyman in a one-count Information with violating 18 U.S.C. § 1752(a)(1). On August 4, 2023, pursuant to a plea agreement, Wyman pleaded guilty to the sole count in the Information. By plea agreement, Defendant agreed to pay $500 in restitution to the Architect of the Capitol.

**III.    Statutory Penalties**

Wyman now faces a sentencing for violating 18 U.S.C. § 1752(a)(1). As noted by the plea agreement and the U.S. Probation Office, Wyman faces up to one year of imprisonment and a fine

of up to $5,000. The defendant must also pay restitution under the terms of his plea agreement. *See* 18 U.S.C. § 3663(a)(3); *United States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C. Cir. 2008).

### IV.     The Sentencing Guidelines and Guidelines Analysis

As the Supreme Court has instructed, the Court "should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *United States v. Gall*, 552 U.S. 38, 49 (2007). "As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark" for determining a defendant's sentence. *Id.* at 49. The United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions" and are the "starting point and the initial benchmark" for sentencing. *Id.* at 49.  The government agrees with the Sentencing Guidelines calculation set forth in the PSR.

| | |
|---|---|
| Base Offense Level (U.S.S.G. §2B2.3(a)) | +4 |
| Specific Offense Characteristics (U.S.S.G. §2B2.3(b)(1)(A)) | +2 |
| Acceptance of Responsibility (USSG §3E1.1(a)) | <u>-2</u> |
| Total Adjusted Offense Level | 4 |

*See* PSR at ¶¶ 29-37.

Recent amendments to the Sentencing Guidelines for 2023 include a new guideline, U.S.S.G. § 4C1.1, which provides for a two-level decrease in the offense level for offenders who have no criminal history points and who meet certain additional criteria. Section 4C1.1 will be in effect at the time of sentencing in this matter, but was not considered at the time the parties entered into the plea agreement.

The Court should not apply § 4C1.1 here. The January 6 riot was a violent attack that threatened the lives of legislators and their staff, interrupted of the certification of the 2020 Electoral College vote count, did irrevocable harm to our nation's tradition of the peaceful transfer of power, caused more than $2.9 million in losses, and injured more than one hundred police

10

officers. Every rioter, whether or not they personally engaged in violence or personally threatened violence, contributed to this harm. *See, e.g., United States v. Rivera*, 21-cr-60 (CKK), ECF No. 62 at 13 ("Just as heavy rains cause a flood in a field, each individual raindrop itself contributes to that flood. Only when all of the floodwaters subside is order restored to the field. The same idea applies in these circumstances. Many rioters collectively disrupted congressional proceedings and each individual rioters contributed to that disruption. Because [the defendant's] presence and conduct in part caused the continued interruption to Congressional proceedings, the court concludes that [the defendant] in fact impeded or disrupted the orderly conduct of Government business or official functions"). The government is not aware of any judge in a January 6 case issuing a lower sentence than it would otherwise have imposed based on § 4C1.1 and the court specifically rejected such a request in *United States v. Nassif*, 21-cr-421 (JDB), where the defendant was convicted of violations of 18 U.S.C. §§ 1752(a)(1) and 1752(a)(2) and 40 U.S.C. §§ 5104(e)(2)(D) and 5104(e)(2)(G).

Moreover, the Sentencing Commission enacted § 4C1.1 based on recidivism data for offenders released in 2010. *See* U.S. SENT'G COMM'N, RECIDIVISM OF FEDERAL OFFENDERS RELEASED IN 2010 (2021), available at https://www.ussc.gov/research/research-reports/recidivism-federal-offenders-released-2010. Given the unprecedented nature of the Capitol attack, there is no reason to believe this historical data is predictive of recidivism for defendants who engaged in acts of political extremism on January 6. This is particularly so given the degree to which individuals, including defendants who have been sentenced, continue to propagate the same visceral sentiments which motivated the attack.

Due to the unique nature of the January 6 mob, the harms caused by the January 6 riot, and the significant need to deter future mob violence, the government submits that even if the Court

finds that § 4C1.1 applies, the Court should nevertheless vary upwards by two levels to counter any reduction in offense level. Such treatment would recognize the unique nature of the criminal events of January 6, 2021, coupled with the overwhelming need to ensure future deterrence, despite a person's limited criminal history.

Finally, to avoid unnecessary litigation, if the Court declines to apply § 4C1.1, the government requests that the Court make clear at sentencing that it would have imposed the same sentence regardless of whether § 4C1.1 applies.[3]

The U.S. Probation Office calculated Wyman's criminal history at Category I. PSR at ¶ 44. Accordingly, the U.S. Probation Office calculated Wyman's total adjusted offense level, after acceptance, at 4, and his corresponding Guidelines imprisonment range at 0-6 months. PSR at ¶¶ 37, 74. Wyman's plea agreement contains an agreed-upon Guidelines' calculation that mirrors the U.S. Probation Office's calculation.

Here, while the Court must consider the § 3553 factors to fashion a just and appropriate sentence, the Guidelines unquestionably provide the most helpful benchmark. As this Court knows, the government has charged a considerable number of persons with crimes based on the January 6 riot. This includes hundreds of felonies and misdemeanors that will be subjected to Guidelines analysis. In order to reflect Congress's will—the same Congress that served as a backdrop to this criminal incursion—the Guidelines are a powerful driver of consistency and fairness.

---

[3] U.S.S.G. § 5C1.1 has also been amended with a new application note providing that if a defendant receives an offense level reduction under §4C1.1 and either their applicable guideline range is in Zone A or B of the Sentencing Table, or the guideline range overstates the seriousness of the offense, imprisonment may not be appropriate. *See* U.S.S.G. § 5C1.1, comment. n. 10. The government submits that for the same reasons that § 4C1.1 should not be applied in this case, a sentence of imprisonment is appropriate notwithstanding Application Note 10 to § 5C1.1.

V.     **Sentencing Factors Under 18 U.S.C. § 3553(a)**

In this misdemeanor case, sentencing is guided by 18 U.S.C. § 3553(a), which identifies the factors a court must consider in formulating the sentence. In this case, as described below, the Section 3553(a) factors weigh in favor of 30 days' incarceration followed by one year of supervised release.

A. **The Nature and Circumstances of the Offense**

The attack on the U.S. Capitol on January 6 posed "a grave danger to our democracy." *United States v. Munchel*, 991 F.3d 1273, 1284 (D.C. Cir. 2021). The attack "endangered hundreds of federal officials in the Capitol complex," including lawmakers who "cowered under chairs while staffers blockaded themselves in offices, fearing physical attacks from the rioters." *United States v. Judd*, 21-cr-40, 2021 WL 6134590, at *5 (D.D.C. Dec. 28, 2021). While assessing Wyman's participation in that attack to fashion a just sentence, this Court should consider various aggravating and mitigating factors. Notably, for a misdemeanor defendant like Wyman, the absence of violent or destructive acts is not a mitigating factor. Had Wyman engaged in such conduct, he would have faced additional criminal charges.

Some of the aggravating factors in Wyman's case included: his lengthy presence in the building, his engagement with other rioters to open the Rotunda Door, his engagement with the officer in the Rotunda, and his lack of remorse. Those aggravating factors establish the clear need for a sentence that includes incarceration.

B. **Wyman's History and Characteristics**

As set forth in the PSR, Wyman has no criminal history. ECF 15 ¶¶ 38-45. Wyman reported to the PSR writer that he graduated from West Point in 1977 and served in the U.S. Army through 1983. ECF 15 ¶ 71. Thereafter, Wyman worked as a construction manager (1985-1988, 2009 to

13

2013), president of a company (1988 to 2004), operations planner, project manager and engineer (2004 to 2007), and, most recently, an Uber driver and cryptocurrency miner. ECF 15 ¶¶ 65-69.

While Wyman's military service is laudable, it renders his conduct on January 6 all the more troubling. Wyman's initial decision to storm a guarded government building is disturbing in light of his former military service and training. His follow-up decision to assist rioters in pushing open the Rotunda Door and engaging with the police while inside the Capitol building is equally disturbing. *See, e.g., United States v. Creek*, 21-cr-00645 (DLF) (05/02/2022, Transc. at 63) ("And Mr. Creek, no matter what your political views are and no matter what you thought about the 2020 presidential election that day, you know, as you've stated and admitted here today, you know that your actions that day were inconsistent with the oath you took as a Marine, inconsistent with those values. And as a Marine, you defended the ideals of democracy, and you know that in our country elections are governed by the rule of law. Assaults against the police officers who honorably defended our Capitol building that day are inconsistent with all of those values."); *United States v. St. Cyr,* 22-cr-00185 (JDB) (09/13/202, Transc. at 44) ("Military service does warrant some respect and consideration and credit. On the other hand, military service should also be recognized as putting one in a position of taking an oath to the Constitution and having a responsibility to respect the law and to act accordingly. So it cuts both ways.")

### C. The Need for the Sentence Imposed to Reflect the Seriousness of the Offense and Promote Respect for the Law

The attack on the U.S. Capitol building and grounds was an attack on the rule of law. As with the nature and circumstances of the offense, this factor supports a sentence of incarceration, as it will in most cases, including misdemeanor cases, arising out of the January 6 riot. *See United States v. Cronin*, 22-cr-233-ABJ, Tr. 06/09/23 at 20 ("We cannot ever act as if this was simply a political protest, simply an episode of trespassing in a federal building. What this was an attack on

14

our democracy itself and an attack on the singular aspect of democracy that makes America America, and that's the peaceful transfer of power.")

### D. The Need for the Sentence to Afford Adequate Deterrence

Deterrence encompasses two goals: general deterrence, or the need to deter crime generally, and specific deterrence, or the need to protect the public from further crimes by this defendant. 18 U.S.C. § 3553(a)(2)(B-C), *United States v. Russell*, 600 F.3d 631, 637 (D.C. Cir. 2010).

*General Deterrence*

The need for general deterrence weighs heavily in favor of incarceration in nearly every case arising out of the violent riot at the Capitol. Indeed, general deterrence may be the most compelling reason to impose a sentence of incarceration. "Future would-be rioters must be deterred." (statement of Judge Nichols at sentencing, *United States v. Gallagher*, 21-CR-00041 Tr. 10/13/2021 at 37).

General deterrence is an important consideration, because many of the rioters intended that their attack on the Capitol would disrupt, if not prevent, one of the most important democratic processes we have: the peaceful transfer of power to a newly elected President. There is possibly no greater factor that this Court must consider. *United States v. Griffith*, 21-CR-244 (CKK) (09/01/2023 Tr. at 51) ("Our country is not done with elections. We have them in 2024. So there's obviously still a concern. Our democracy is fragile. And violence is an unacceptable way to resolve political differences. You're entitled to your political views. You can protest about them, but you cannot participate in an insurrection.")

*Specific Deterrence*

The need for the sentence to provide specific deterrence to this particular defendant also

15

weighs in favor of 30 days' incarceration followed by supervised release.

Although Wyman accepted responsibility by promptly pleading guilty, he has yet to take any steps to denounce his actions on January 6, 2021, including to the Probation officer who conducted his PSR interview. Given the lack of remorse expressed thus far, the Court should view any remorse Wyman expresses at sentencing with skepticism at best. *See United States v. Mazzocco*, 21-cr-00054 (TSC), Tr. 10/4/2021 at 29-30 ("[The defendant's] remorse didn't come when he left that Capitol. It didn't come when he went home. It came when he realized he was in trouble. It came when he realized that large numbers of Americans and people worldwide were horrified at what happened that day. It came when he realized that he could go to jail for what he did. And that is when he felt remorse, and that is when he took responsibility for his actions.")

The Court must sentence Wyman in a manner sufficient to deter him specifically, and others generally, from participating in a future riot in support of his political goals.

### E.  The Need to Avoid Unwarranted Sentencing Disparities

As the Court is aware, the government has charged hundreds of individuals for their roles in this one-of-a-kind assault on the Capitol, ranging from unlawful entry misdemeanors, such as in this case, to assault on police officers, to conspiracy to corruptly interfere with Congress.[4] This Court must sentence Wyman based on his own conduct and relevant characteristics, but should give substantial weight to the context of his unlawful conduct: his participation in the January 6 riot.

---

[4] A routinely updated table providing additional information about the sentences imposed on other Capitol breach defendants is available here: https://www.justice.gov/usao-dc/capitol-breach-cases. To reveal that table, click on the link "SEE SENTENCES HANDED DOWN IN CAPITOL BREACH CASES." The table shows that imposition of the government's recommended sentence in this case would not result in an unwarranted sentencing disparity.

Wyman has pleaded guilty to Count One of the Information, charging him with Entering and Remaining in a Restricted Building, in violation of 18 U.S.C. § 1752. This offense is a Class A misdemeanor. 18 U.S.C. § 3559. The sentencing factors set forth in 18 U.S.C. § 3553(a), including "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," 18 U.S.C. § 3553(a)(6), do apply, however.

Although all the other defendants discussed below participated in the Capitol breach on January 6, 2021, many salient differences explain the differing recommendations and sentences. While no previously sentenced case contains the same balance of aggravating and mitigating factors present here, the sentences in the following cases provide suitable comparisons to the relevant sentencing considerations in this case.

This matter is similar to *United States v. Lentz*, 22-cr-00053 (RDM), where the Defendant, a former police officer, pled guilty to violating 18 U.S.C. § 1752(a)(1) for entering the Capitol Building. Lentz was forthcoming with investigators and self-surrendered. Unlike Wyman, Lentz publicly celebrated the successes of the rioters on social media, but did not appear to be involved in pushing open doors or interfering with the police. This Court sentenced Lentz to one month home incarceration. Similarly, in *United States v. Peterson*, 21-cr-309 (ABJ), the defendant entered the Capitol, may have seen some violence in the Crypt, and stood outside the Capitol interacting with officers and watching them get assaulted. Judge Berman Jackson sentenced Peterson to 30 days incarceration. Finally, the defendant in *United States v. Dropkin*, 21-cr-00734 (JEB), was inside the Capitol Building for over an hour and was part of a group of rioters that overwhelmed police officers. Chief Judge Boasberg sentenced Dropkin to 30 days in jail.

In any event, the goal of minimizing unwarranted sentencing disparities in § 3553(a)(6) is "only one of several factors that must be weighted and balanced," and the degree of weight is "firmly committed to the discretion of the sentencing judge." *United States v. Coppola*, 671 F.3d 220, 254 (2d Cir. 2012). The § 3553(a) factors that this Court assesses are "open-ended," with the result that "different district courts may have distinct sentencing philosophies and may emphasize and weigh the individual § 3553(a) factors differently; and every sentencing decision involves its own set of facts and circumstances regarding the offense and the offender." *United States v. Gardellini*, 545 F.3d 1089, 1093 (D.C. Cir. 2008). "[D]ifferent district courts can and will sentence differently—differently from the Sentencing Guidelines range, differently from the sentence an appellate court might have imposed, and differently from how other district courts might have sentenced that defendant." *Id.* at 1095.

## VI. Restitution

The Victim and Witness Protection Act of 1982 ("VWPA"), Pub. L. No. 97-291 § 3579, 96 Stat. 1248 (now codified at 18 U.S.C. § 3663), "provides federal courts with discretionary authority to order restitution to victims of most federal crimes." *United States v. Papagno*, 639 F.3d 1093, 1096 (D.C. Cir. 2011); *see* 18 U.S.C. § 3663(a)(1)(A) (Title 18 offenses subject to restitution under the VWPA).[5] Generally, restitution under the VWPA must "be tied to the loss caused by the offense of conviction," *Hughey v. United States*, 495 U.S. 411, 418 (1990); identify a specific victim who is "directly and proximately harmed as a result of" the offense of conviction, 18 U.S.C. § 3663(a)(2); and is applied to costs such as the expenses associated with recovering

---

[5] The Mandatory Victims Restitution Act, Pub. L. No. 104-132 § 204, 110 Stat. 1214 (codified at 18 U.S.C. § 3663A), "requires restitution in certain federal cases involving a subset of the crimes covered" in the VWPA, *Papagno*, 639 F.3d at 1096, including crimes of violence, "an offense against property … including any offense committed by fraud or deceit," "in which an identifiable victim or victims has suffered a physical injury or pecuniary loss." 18 U.S.C. § 3663A(c)(1).

from bodily injury, 18 U.S.C. § 3663(b). At the same time, the VWPA also authorizes a court to impose restitution "in any criminal case to the extent agreed to by the parties in a plea agreement." *See* 18 U.S.C. § 3663(a)(3). *United States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C. Cir. 2008).

Those principles have straightforward application here. The parties agreed, as permitted under 18 U.S.C. § 3663(a)(3), that Wyman must pay $500 in restitution, which reflects in part the role Wyman played in the riot on January 6.[6] Plea Agreement at ¶ 12. As the plea agreement reflects, the riot at the United States Capitol had caused "approximately $2,881,360.20" in damages, a figure based on loss estimates supplied by the Architect of the Capitol and other governmental agencies as of October 14, 2022. *Id.* (As noted above in footnote 1, the amount of damages has since been updated by the Architect of the Capitol, USCP, and MPD.) Wyman's restitution payment must be made to the Clerk of the Court, who will forward the payment to the Architect of the Capitol and other victim entities. *See* PSR ¶ 88.

//
//
//
//
//
//
//
//

---

[6] Unlike under the Sentencing Guidelines for which (as noted above) the government does not qualify as a victim, *see* U.S.S.G. § 3A1.2 cmt. n.1, the government or a governmental entity can be a "victim" for purposes of the VWPA. *See United States v. Emor*, 850 F. Supp.2d 176, 204 n.9 (D.D.C. 2012) (citations omitted).

## VII. Conclusion

Sentencing requires the Court to carefully balance the § 3553(a) factors. Balancing these factors, the government recommends that this Court sentence Wyman to 30 days' incarceration followed by one year of supervised release, 60 hours of community service, and $500 in restitution. Such a sentence protects the community, promotes respect for the law, and deters future crime by imposing restrictions on Wyman's liberty as a consequence of his behavior, while recognizing his acceptance of responsibility for his crime.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By: /s/Alexandra F. Foster
ALEXANDRA F. FOSTER
Assistant United States Attorney
D.C. Bar No. 470096
Detailed to the D.C. U.S. Attorney's Office
Washington, DC  20530
Alexandra.Foster@usdoj.gov
(619) 546-6735