```
           UNITED STATES DISTRICT COURT
           FOR THE DISTRICT OF COLUMBIA

               No. 1:23-CR-000243-RDM
```

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | **DEFENDANT'S** |
| | ) | **SENTENCING MEMORANDUM** |
| JAMES WYMAN, | ) | |
| | ) | |
| Defendant. | ) | |

Defendant, James Wyman, (the "Defendant" or "Mr. Wyman"), by and through undersigned counsel, respectfully submits this Sentencing Memorandum pursuant to 18 U.S.C. § 3661, to highlight aspects of Mr. Wyman's case and provide additional information for the Court's consideration. This Memorandum references the various factors found in the Federal Sentencing Guidelines Manual and 18 U.S.C. § 3553(a), relevant in fashioning a sentence for the Defendant that is, "sufficient, but not greater than necessary" to satisfy the purposes of 18 U.S.C. § 3553(a)(2). Simply stated, the sentence ultimately imposed by the Court should be the least restrictive necessary to comply with Congressional intent. Id.

**FRAMING AN APPROPRIATE SENTENCE**

Since the Court in Booker held that the Sentencing Guidelines are merely advisory, "sentencing courts have discretion to sentence defendants within the statutory range, regardless of whether the sentence falls within the Guidelines range or without." United States v. Booker, 543 U.S. 220 (2005); see also U.S. v. Dorcely, 454 F.3d 366

1

(D.C. 2007). Consideration of the Guidelines, which is but one of the seven factors listed in 18 U.S.C. § 3553(a), is only "the starting point and the initial benchmark." Gall v. U.S., 552 U.S. 38, 49 (2007). The court "must calculate and consider the applicable Guidelines range, but is not bound by it." Dorcely, 454 F.3d at 381 (internal quotation marks and citation omitted).

**ARGUMENT**

The Defendant Should be Sentenced to a Term of Probation

Undersigned counsel, for the reasons set forth herein, including Mr. Wyman having no criminal history, his military service and employment history, his perplexing upbringing and the tragic loss of his wife, and his acceptance of responsibility, respectfully asks the Court to sentence Mr. Wyman to a term of probation, which is a sentence within the Sentencing Guideline range recommended by the parties' plea agreement, and as calculated by the United States Probation Office. See Presentence Investigation Report ("PSR") ¶¶ 73-75. A probationary sentence for Mr. Wyman is also a sentence that is sufficient, but not greater than necessary to accomplish the purpose of sentencing as set forth in 18 U.S.C. § 3553(a)(2).

Mr. Wyman has been determined to be a Total Offense Level 4 and Criminal History Category I, with a corresponding calculated Guideline range of 0-6 months imprisonment. See PSR ¶ 74. The November 1, 2023 Amendments to the United States Sentencing Guidelines provide additional support to Mr. Wyman's request for a probationary sentence. Because Mr. Wyman has no scorable criminal history, he qualifies for

2

the new two-level adjustment for certain Zero-Point Offenders in U.S.S.G. § 4C1.1. See PSR ¶ 35. More importantly, Application Note 10 to the newly amended § 5C1.1 Guideline states that, for offenders like Mr. Wyman, who both qualify for the reduction under § 4C1.1 for zero-point offenders and have a guideline range in Zone A or B of the sentencing table, "a sentence other than a sentence of imprisonment…is generally appropriate."

Despite the conduct giving rise to the instant offense, Mr. Wyman has shown dedication and respect for his country through his military service. After graduating from the U.S. Military Academy at West Point in 1977, Mr. Wyman was commissioned as a 2nd Lieutenant in the U.S. Army. See PSR ¶ 71. During the course of his military career, he was stationed in Virginia, Georgia, Germany, and eventually North Carolina. PSR ¶¶ 53, 71. Mr. Wyman earned several ribbons and medals for his service, including the Army Service Ribbon, Overseas Service Ribbon, Meritorious Service Ribbon and Army Achievement Medal. PSR ¶ 71. At the time of his Honorable Discharge in June of 1983, Mr. Wyman had achieved the rank of Captain. Id.

Following his military service, Mr. Wyman held a variety of employment positions that often took him overseas. For instance, from 2004 to 2007, Mr. Wyman's employment at Kellogg, Brown & Root Services (KBR),Inc., as an operations planner, project manager, and engineer took him to locations like Djibouti, Kuwait, and Iraq. See PSR ¶ 67. In 2009, Mr. Wyman worked as a construction project manager for the Department of Public Works with the Fluor Corporation, located in

Greenville, South Carolina. PSR ¶ 66. In this role, Mr. Wyman was tasked with responsibilities as part of the U.S. Army's Logistics Civil Augmentation Program (LOGCAP) IV, in association with Operation Enduring Freedom, and was assigned to Bagram Airbase in Afghanistan. Id. Fortunately, Mr. Wyman was able to share these overseas work experiences with his beloved companion - Mary Walker.

Mr. Wyman married Mary Walker on January 30, 2004. See PSR ¶ 54. Because Mary was employed by many of the same companies as Mr. Wyman, this allowed them to be deployed to the same overseas locations together. Id. Sadly, in 2018, Mary's health began to decline. Id. While recovering from a double coronary bypass, Mary learned that she only had one functioning kidney in addition to an aortic aneurysm. Id. Shortly thereafter, in January 2019, Mary was formally diagnosed with ovarian cancer. Id. She passed away on November 25, 2019, at the age of 65. Id. Mr. Wyman has really struggled with Mary's death. Not only was the marriage the happiest time in Mr. Wyman's life, but Mary was his sole immediate family.

Mr. Wyman was originally born Neil Gregory Paulik. See PSR ¶ 46. At age 4, he was adopted by Morton and Julia Wyman at which time he assumed the name James Brierly Wyman. Id. Despite having had all his childhood necessities and more (e.g. private schools, extracurriculars, summer camps, vacations, etc.), Mr. Wyman's relationship with his adoptive parents was tumultuous, particularly with his adoptive mother - Julia. PSR ¶¶ 49, 50. Mr. Wyman described Julia as a severe disciplinarian, and likened her to a military drill

4

sergeant. PSR ¶ 50. Though mostly verbal abuse, Mr. Wyman recalled some physical discipline and occasions where Julia would become increasingly angry, unstable, and complicated. PSR ¶¶ 50, 52. From the moment he was adopted, Mr. Wyman was told that he would attend West Point. PSR ¶ 48. Yet, when the time came for his graduation weekend festivities, Julia was so enraged by My. Wyman's failure to book a room at a specific hotel that she refused to attend his West Point graduation ceremony. PSR ¶ 53. Mr. Wyman's relationship with Julia ultimately deteriorated after graduation and the two did not have contact for many years. PSR ¶ 51. Mr. Wyman still communicated with his adoptive father - Morton - until he received a letter from him while stationed in Germany telling Mr. Wyman not to write or call anymore. Id. Mr. Wyman never spoke to Morton again prior to his death in 1993. Id. Around 2005, Mr. Wyman reconnected with Julia, which he attributed to her old age and the fact that "she forgot that she hated [him]." PSR ¶ 52. Nevertheless, Julia died on November 10, 2009, at the age of 88. Id. A few years ago, Mr. Wyman learned the identity of his biological mother - Norma Marie Paulik. PSR ¶ 47. Sadly, she had already passed away. Id. Mr. Wyman's biological father is unknown. PSR ¶46.

      To an outsider, Mr. Wyman's upbringing might have appeared idyllic. However, behind closed doors there was a much darker side and experiences that really shook Mr. Wyman. It wasn't until 2004 when Mr. Wyman married Mary that he truly began to feel happiness and comfort in having a family. This happiness ended all too quickly though with

5

Mary's death in November of 2019. Within months of Mary's death, Mr. Wyman faced the impact of the Covid-19 pandemic and stay-in-place orders alone. These two traumatic events, in close proximity to each other, had a significant impact on Mr. Wyman and helped create the context in which he chose to enter the Capitol on January 6, 2021. While Mr. Wyman acknowledges that his behavior in this case is inexcusable, he is remorseful for his participation in the events that occurred at the Capitol on January 6th.[1] As the Court can see from the many character letters[2] submitted on Mr. Wyman's behalf, he has aligned himself with support in his community. Such a support system bodes well for Mr. Wyman's ability to comply with this Court's judgment.

## CONCLUSION

For the reasons outlined herein, including Mr. Wyman's zero criminal history, his military service and employment history, his perplexing upbringing and the tragic loss of his wife, and his acceptance of responsibility, undersigned counsel respectfully requests that the Court impose a sentence of probation in this case.

WHEREFORE, based on the preceding arguments as supported herein by both facts and authorities, and based on the PSR's factual information, and in consideration with the factors set out in 18 U.S.C. § 3553(a), Mr. Wyman respectfully requests that the Court:

1. Impose a probationary sentence on Mr. Wyman;

---

[1] Undersigned counsel submits that Mr. Wyman was interviewed by law enforcement on January 16, 2024, and has thus fulfilled his obligations under the plea agreement.
[2] Seventeen (17) Character Letters are attached as Defendant's Appendix.

2. If the Court deems any period of confinement is appropriate, that Mr. Wyman be allowed to serve that term as a term of home detention or intermittent confinement;

3. Impose a special assessment in the amount of $25 and restitution of $500 to the Architect of the Capitol;

4. If the Court determines a fine is appropriate, impose a fine at the low end of the applicable fine range; and

5. Grant Mr. Wyman such other and further relief as it may deem just, proper, and reasonable.

Respectfully submitted, this 24th day of January, 2024.

DYSART WILLIS

By: /s/ Christian E. Dysart           /s/ Geoffrey Ryan Willis
CHRISTIAN E. DYSART                   GEOFFREY RYAN WILLIS
N.C. State Bar No. 36734              N.C. State Bar No. 33004
christian@dysartwillis.com            ryan@dysartwillis.com
530 Hillsborough St., Suite 200       530 Hillsborough St., Suite 200
Raleigh, NC  27603                    Raleigh, NC 27603
Telephone: (919) 747-8380             Telephone: (919) 747-8380
Facsimile: (919) 882-1222             Facsimile: (919) 882-1222
*RETAINED ATTORNEY FOR*               *RETAINED ATTORNEY FOR*
*DEFENDANT*                           *DEFENDANT*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true copy of the foregoing **DEFENDANT'S SENTENCING MEMORANDUM** was filed with the Clerk of Court for the District of Columbia using the CM/ECF system, which will send electronic notification of such filing to the following counsel of record:

>Alexandra Foster
>United States Attorney's Office
>880 Front Street, Room 6293
>San Diego, California 92101-8807
>Phone: (619) 546-6735
>Email: alexandra.foster@usdoj.gov

This, 24th day of January, 2024.

>                           DYSART WILLIS
>
>                    By:   /s/ Geoffrey Ryan Willis
>                          GEOFFREY RYAN WILLIS
>                          N.C. State Bar No. 33004
>                          Email: ryan@dysartwillis.com
>                          530 Hillsborough St., Suite 200
>                          Raleigh, NC  27603
>                          Telephone: (919) 747-8380
>                          Facsimile: (919) 882-1222
>                          *RETAINED ATTORNEY FOR*
>                          *DEFENDANT*